Jerry McKENZIE and Thomas Herndon, Plaintiffs-Appellants,

v.

Ralph LAMB, Sheriff of Clark County, Detective Gary Barlow, Detective J. McGuckin, Detective Herbert Barrett, Detective Chuck Lee, Detective B. Avants, Sgt. Frank Jergovic, Detective M.J. Maddock, Detective Al Leavitt, and Clifford Hazelton, Defendants-Appellees.

No. 82–5499.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1983.

Submission Vacated May 17, 1984.

Resubmitted May 17, 1984.*

Decided July 24, 1984.

* Submission was vacated upon the death of the late Judge Trask. Judge Goodwin, who re- placed Judge Trask, has listened to the tapes of oral argument.

Charles W. Daniels, Freedman, Boyd, Daniels, Albuquerque, N.M., for plaintiffs-appellants.

Dana Jonathan Nitz, Barker, Gillock & Perry, Las Vegas, Nev., for defendants-appellees.

Before GOODWIN, KENNEDY, and POOLE, Circuit Judges.

KENNEDY, Circuit Judge:

Appellants Jerry McKenzie and Thomas Herndon sued officers of the Las Vegas, Nevada, police department under 42 U.S.C. § 1983. The substance of their complaint was that the police officers, in their zeal to solve a brutal murder and robbery that had occurred five months previously, made mistaken arrests and then tried to cover-up their errors, all in violation of the appellants' rights under the fourteenth amendment and under state law.

McKenzie and Herndon are businessmen from Albuquerque, New Mexico. Both were involved in the turquoise jewelry trade. In early 1976, McKenzie, Herndon, and one Michael Hazelton devised a business plan to sell high quality turquoise jewelry to wealthy entertainers. The sales were to be made at private showings ar-

ranged through Hazelton's father, Clifford. Clifford Hazelton had recently moved to Las Vegas from Hollywood, where he had been a screenwriter and supposedly had numerous contacts within the entertainment community.

On April 2, 1976, Michael Hazelton called his father in Las Vegas and discussed the venture. Clifford, skeptical of the plan, was concerned that his son's partners might not be legitimate businessmen. He contacted the Las Vegas police to express his doubts and seek advice.

The Las Vegas police were particularly interested in the report of a plan to sell expensive turquoise jewelry at private showings. In November 1975, a substantial amount of turquoise jewelry had been stolen from a shop owned by Al and Beth Edwards, who were brutally murdered. The police thought Clifford Hazelton's call might be a lead in the case.

In order to pursue the possibility of solving the Edwards murder and robbery case, the police concocted a plan: Wayne Newton, an entertainer acquainted with one of the officers, would feign interest in the appellants' jewelry and request them to show their merchandise in Las Vegas. The Las Vegas police, posing as members of Newton's party, would be able to observe both the jewelry and the appellants.

Pursuant to the police plan, a showing took place on April 9, 1976 at Newton's hotel. A witness from the Edwards' case signaled to the officers that he could not identify the appellants or their jewelry. The appellants were arrested nevertheless, and their merchandise was seized. Appellants allege that during the course of the arrests, the officers, all in plain-clothes, refused to identify themselves and used unwarranted physical intimidation. Appellants were charged with receiving stolen property, a felony, and doing business without an occupational license, a misdemeanor. The felony charge was never prosecuted. On the misdemeanor charge, appellants were acquitted by a jury.

McKenzie and Herndon brought this suit in federal district court, alleging civil rights violations based on unlawful arrest, unlawful seizure of their property, excessive use of force, and conspiracy to deprive them of their civil rights, as well as related state tort claims. The district court granted summary judgment to the defendants on all claims for relief. The district court found as a matter of law that probable cause existed for both the felony and misdemeanor arrests, and that no excessive force was used. In addition, the district court found that Clifford Hazelton did not cause appellants arrest. McKenzie and Herndon appeal. We reverse the summary judgment granted in favor of the officers; we affirm that part of the summary judgment granted in favor of Clifford Hazelton.

■ Under § 1983 "[e]very person who, under color of [state law], ... [deprives] any citizen of the United States ... of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983. The fourth amendment to the United States Constitution, applicable to the states through the fourteenth amendment, prohibits arrests without probable cause. *Beck v. Ohio*, 379 U.S. 89, 90–91, 85 S.Ct. 223, 225–226, 13 L.Ed.2d 142 (1964). Arrests without probable cause thus give rise to a cause of action for damages. *Gilker v. Baker*, 576 F.2d 245 (9th Cir.1978) (§ 1983 action); *see Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971) (constitutional damage action for unlawful arrest under color of federal law).

■ Appellants allege that their arrests on both the felony and misdemeanor charges were without probable cause. Summary judgment is proper only if no material facts are in dispute and one party is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c). Our task in determining whether probable cause to arrest existed as a matter of law in this § 1983 action is slightly different from a similar determination in the context of a direct review of a criminal arrest. In the latter situation, we

are called upon to review both law and fact and to draw the line as to what is and is not reasonable behavior. We are not always in agreement as to its location, but a line must be drawn. By contrast, in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, *see Smiddy v. Varney*, 665 F.2d 261, 265 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Gilker*, 576 F.2d at 247; and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest. We conclude that the district court erred in granting summary judgment for the defendants on the issue of probable cause to make the felony and misdemeanor arrests.

■ We first address the existence of probable cause to arrest for the felony of receiving stolen property. Even if we invert the usual analysis, *cf. Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (evidence to be construed in light most favorable to party opposing summary judgment), and resolve all factual questions in *favor* of the party moving for summary judgment, here the officers, there is no basis on this record for a trier of fact to conclude that there was probable cause to arrest the appellants for a felony. Thus, summary judgment for the officers cannot be sustained on the felony arrest aspect of the case. If no further evidence were adduced by the defendants, no reasonable jury could find probable cause existed for the felony arrests, and the plaintiffs would be entitled to summary judgment. No motion was made for summary judgment by the plaintiffs below, and we leave that question for a determination in the first instance by the trial court upon remand. *See Nesmith v. Alford*, 318 F.2d 110, 115–21 (5th Cir.1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964) (reversing jury verdict for the defendants on issue of probable cause as unreasonable).

■ Conclusive evidence of guilt is not necessary to establish probable cause. Mere suspicion, common rumor, or even strong reason to suspect are not enough, however. *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959). There must be some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 93–95, 85 S.Ct. 223, 226–227, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 480–83, 83 S.Ct. 407, 413–415, 9 L.Ed.2d 441 (1963); *Henry v. United States*, 361 U.S. at 102–104, 80 S.Ct. at 171–172. "Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979) (quotations and citations omitted).

Taking the evidence in the light most favorable to the officers, the information the officers had did not constitute probable cause to believe appellants had received stolen property. The officers rely primarily upon two pieces of information: the alleged likeness of Herndon to a description of the primary Edwards' murder suspect, and alleged similarities of appellants' jewelry to that stolen from the Edwards' shop. Our review of the police officers' allegations and supporting depositions, however, shows the officers' position to be without substance.

The Edwards' murder suspect was described to the police as a man six-foot to six-foot-two inches, one-hundred-eighty to one-hundred-ninety pounds, with brown hair, brown eyes, and a Texas or southern accent. Thomas Herndon is six-foot-four inches tall, slender, with brown hair and blue eyes. While there is some similarity between Thomas Herndon's physical characteristics and the description of the Ed-

wards' murder suspect, the witness who provided the description accompanied the police to the scene of the April 9 arrest to identify the suspect, and he signaled that Herndon was *not* the suspect he had described. There was no probable cause based on similarity, either standing by itself or combined with other factors.

The officers' reliance on the similarity of the jewelry to that stolen from the Edwards is also misplaced. The officers admittedly had no expertise or special knowledge concerning turquoise jewelry. They had never seen the Edwards' jewelry and were familiar with it only from written inventories and from 12 to 15 promotional photographs taken at the opening of the Edwards' store. Of the hundreds of pieces of the appellants' jewelry on display, the officers could identify only three which matched general inventory descriptions of items reported stolen from the Edwards' store. The officers had no knowledge how common such items were. Further, the witness the officers had brought along with them, who had personal knowledge of the Edwards' jewelry and who was an expert in turquoise jewelry, could not identify the jewelry as being from the Edwards' store.

In addition, the appellants possessed consignment receipts for all pieces of jewelry they did not individually own, and presented those receipts to the police at the time of their arrest. The expert the officers had on the scene recognized the names of at least some of the consignors and knew them to be legitimate businessmen. When pressed during a deposition to articulate the tie between appellants' jewelry and that stolen from the Edwards, one officer replied, "[w]ell, the whole thing related. I mean, like I say, I'm not an expert, but turquoise jewelry is turquoise jewelry."

The record, even taken in the light most favorable to the officers, reflects the inescapable conclusion that the appellants were arrested because there was an unknown possibility that the jewelry was stolen. Such tenuous evidence of a tie between appellants' jewelry and the Edwards case

did not amount to the "reasonable ground for belief of guilt" necessary to establish probable cause to arrest for receiving stolen property. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). It constituted merely suspicion, and very slight suspicion at best. The Edwards murder and robbery did not give the Las Vegas police *carte blanche* to arrest persons attempting to sell substantial quantities of turquoise jewelry.

The additional circumstances asserted by the officers do not change our conclusion. According to the officers, Clifford Hazelton had told them he entertained fears that his son might be involved with persons dealing in stolen jewelry. The officers, however, were aware that Clifford Hazelton had no personal knowledge of any of these matters. Further, none of Clifford Hazelton's fears were confirmed by objective evidence. The officers had no record of prior arrests or convictions for either appellant. Although they were aware of Herndon's identity one week before the arrest, they made no attempt to check his background with federal law enforcement agencies. They made no inquiry about Herndon to Albuquerque police until the afternoon of the arrest, when it was too late for the Albuquerque officials to make a timely response. There was no evidence that either appellant had ever been in Las Vegas, much less at the time of the Edwards robbery some five months earlier, nor was there any objective indication that appellants had ever dealt in stolen merchandise.

The officers also allege that Clifford Hazelton indicated to them that his son had said the appellants were bad characters and owned registered guns. An unsupported allegation that the appellants were "bad characters" who owned jewelry and firearms did not provide probable cause to believe they were criminals.

The officers further rely upon the allegedly surreptitious nature of appellants' activities to justify their determination of probable cause to arrest for receiving stolen property. In particular, they cite information, allegedly from Clifford Hazelton,

that appellants' jewelry was stored in a vault, that appellants were not arranging formal security for the transportation of the jewelry, and that the jewelry was going to be sold at private showings for less than its retail value.

Storage in a vault of highly valuable jewelry held on consignment for an upcoming showing does not suggest criminality. Rather, it suggests prudent business practice. Nor does appellants' decision not to publicize the nature of their visit by arranging formal security for the trip from the Las Vegas airport to their hotel suggest criminal behavior. The other activities, private showings of merchandise and sale at less than retail, are also prevalent, legitimate business practices. The latter is, of course, the essence of wholesaling. The officers admittedly did not know anything about the turquoise jewelry trade; they could not tell if such practices were unusual for that business.

The facts relied on by the officers, taken either individually or together, are fully consistent with legitimate business behavior. The totality of the evidence shows only that the appellants were coming to Las Vegas with a quantity of high quality turquoise, that they were being discreet in their business dealings, and that they might have been suspicious individuals. While the evidence possessed by police may have justified further investigation, no reasonable jury could find that it amounted to probable cause to make the felony arrest. See *Gilker v. Baker*, 576 F.2d at 247 (9th Cir.1978) ("explanation lent itself to verification which apparently was never sought"). The appellees cannot support the summary judgment ruling on the theory that the felony arrest was lawful.

■ Appellants also contend summary judgment on the validity of the arrest for doing business without a license, a misdemeanor, was inappropriate because material facts concerning probable cause for arrest on that ground are in dispute. We agree. The ordinance under which this arrest was made prohibits "peddlers, solicitors and itinerant vendors" from engaging

in business in Clark County unless a business license is obtained and an accompanying tax is paid. Wholesale activities are exempt from the license requirement. The relevant ordinances are set forth in the appendix to our opinion. Though neither party has addressed the issue, we note that the ordinances apply only to unincorporated areas of Clark County. We do not know if the hotel in question was in an incorporated or unincorporated area.

Both McKenzie and Herndon testified in depositions that the Las Vegas police led them to believe Wayne Newton was establishing a chain of retail jewelry stores and wished to view their line as a potential source of supply. On the basis of this representation, appellants argue that the Las Vegas police knew or should have known that appellants came to Las Vegas to engage in wholesale trade and were thus exempt from the business license requirement. Appellants' evidence, if believed, would permit a jury to find that there was no probable cause to arrest on the misdemeanor charge. We remand the issue for determination at trial.

Appellants' state tort claims were dismissed on the basis of the district court's erroneous grant of summary judgment to the officers on the issue of probable cause. Our reversal of the district court on this issue also requires reinstatement of the state tort actions.

■ In addition to their claims of unwarranted arrest, appellants allege that excessive force was used in arresting them. They have presented sufficient evidence to make out such a claim for excessive use of force. Appellants have offered evidence that the defendant plain-clothes officers, some dressed as bellhops and busboys, burst into the hotel room with weapons drawn, forced appellants against the wall, handcuffed them, and threw them to the floor. The defendants, according to appellants, then pressed the barrels of their guns against appellants' heads and refused to identify themselves as police officers, in spite of repeated requests and pleas. When finally told that the assailants were

police officers, Herndon asked to see official identification. He alleges, in testimony corroborated by Michael Hazelton, that an officer pressed the barrel of a gun between his eyes and replied, "that's about all [the identification] you need." The appellants asked why they were being treated so roughly; the gist of the officers' alleged reply was: You are in Las Vegas, Nevada, and we do things the way we please out here.

■ The reasonableness of force should be analyzed in light of such factors as the requirements for the officers' safety, the motivation for the arrest, and the extent of the injury inflicted. *Roberts v. Marino*, 656 F.2d 1112, 1114 (5th Cir.1981). If appellants' evidence is believed, it would provide ample basis for a jury to find the police officers' conduct excessive, even assuming that the trier of fact finds for the defendants on the issue of probable cause to arrest for the misdemeanor, though the latter assumption is problematic. *See, e.g., Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). We reverse the district court's grant of summary judgment on the issue of excessive use of force and remand that issue for determination below.

■ As with excessive force, appellants may recover for other injuries caused by acts independent of their arrest even if the arrests are found to be supported by probable cause. For example, appellants were charged with both the misdemeanor of doing business without a license and the felony of receiving stolen property. The extra felony charge, if unjustified, may have caused injury independent of that caused by the misdemeanor arrest. *See Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); *Nelson v. Las Vegas*, — Nev. —, 665 P.2d 1141, 1144-45 (1983). Similarly, the unlawful retention of appellants' merchandise is not controlled by the existence or nonexistence of probable cause to arrest. *See Barker v. Norman*, 651 F.2d 1107, 1131 (5th Cir.1981).

We leave these issues to a determination by the trial court and, upon proper instruction, the jury. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), may be inapplicable as plaintiffs raise claims of direct violation of their fourth amendment rights, *see id.* at 536, 101 S.Ct. at 1913, but we need not address the question as the parties have neither briefed nor argued the point. Moreover, this circuit's treatment of *Parratt* is currently under reconsideration by the court en banc, *see Haygood v. Younger*, 729 F.2d 613 (9th Cir.1984) (order granting rehearing en banc). The other arguments presented by the parties are best addressed in the first instance by the district court.

■ Finally, the district court granted summary judgment to Clifford Hazelton on the issue of his liability for participation in a conspiracy to deprive appellants of their constitutional rights. We affirm that ruling.

It is uncontested that Clifford Hazelton did no more than inform the Las Vegas police of his concerns about his son's business partners and provide a conduit for communications between appellants and the Las Vegas authorities. He played no part in the arrests and seizures which form the basis of appellants' damage claims, nor is it alleged that he had any input into the decision-making of the Las Vegas police. The district court properly granted summary judgment for Clifford Hazelton on the conspiracy issue under *Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (9th Cir.1981).

The officers' motion to strike is denied. Appellants' motion to remand to a different district court judge is denied without prejudice to its renewal in the district court at an appropriate time.

If appellants evidence is believed, the conduct of the Las Vegas police in this instance was outrageous and unjustifiable. Summary judgment should not have been granted to any defendant other than Clifford Hazelton. The summary judgment in favor of Clifford Hazelton is AFFIRMED.

The summary judgment in favor of the other defendants is REVERSED.

## APPENDIX

### CLARK COUNTY CODE

*6.04.010 License required.* It shall be unlawful for any person, firm, association, partnership or corporation, to commence, carry on, engage in or continue (including the making of deliveries of goods, wares, and merchandise sold elsewhere) in the county, outside the incorporated cities and towns, both within and without unincorporated cities and towns, any business, trade, occupation or employment (except billiard or pool hall, dancing hall, bowling alley, theater, soft drink establishment, gaming game or device permitted by law, or other place of amusement, entertainment or recreation), upon which a license tax is imposed by the terms and provisions of this title and for which a license tax is required to be procured by the terms of this title without first paying such license tax and procuring such license as hereinafter provided. (Clark County, NV Ordinance 134 § 1; March 21, 1961.)

*6.04.140* Every person, firm, association, partnership, corporation, institution or agency violating any of the provisions of this Ordinance shall be guilty of a misdemeanor and shall be punished by a fine of not more than Five Hundred ($500.00) Dollars or imprisonment of not more than six (6) months in the County Jail, or by both such fine and imprisonment. (Clark County, NV Ordinance 134 § 28; March 21, 1961.)

*656.030* It shall be unlawful for any person, in the County of Clark, State of Nevada, outside the incorporated cities and towns, both within and without the unincorporated cities and towns to operate as a peddler, solicitor or itinerant vendor, or as a temporary store, as defined in this Ordinance, without first having procured a license for the same as hereinafter provided. (Clark County, NV Ordinance 167 § 3; June 20, 1962.)

*6.56.010 Definitions.*

(b) "Peddlers, solicitors and itinerant vendors" includes any person, firm or corporation, whether as owner, agent, consigner or employee, whether a resident of the county or not, whether traveling by foot, wagon, automobile, vehicle or any other type of conveyance, from place to place, from house to house, or from street to street, taking or attempting to take orders, carrying, conveying or transporting goods, wares and merchandise, personal property of any nature, offering and exposing the same for sale, or making sales and delivering articles to purchasers or for future delivery, or for services to be furnished or performed in the future, whether or not he has, carries or exposes for sale a sample of the subject of such sale or whether he is collecting advance payments on such sales or not. Who in furthering such purpose, hires, leases, uses or occupies any building, structure, motor vehicle, tent, railroad, boxcar, or boat, public room in hotels, lodging houses, apartments, shops, or any street, alley or other place within the county, for the exhibition and sale of such goods, wares and merchandise, either privately or at public auction provided, includes peddlers, solicitors and itinerant vendors. Such definition does not include persons engaged in the disposal of products of the soil, poultry, eggs, livestock, honey or dairy product if the vendor is a bona fide producer or grower thereof and transports such products from the place of production or growing to the place of sale in a vehicle owned by and standing in his name; *provided further, however, that no such permit or license shall be required of drummers, traveling salesman, or other person engaged in soliciting or taking orders exclusively from the trade or established wholesale or retail dealers for the delivery of goods, wares or merchandise by wholesale.* However, no such permit or license shall be required of a volunteer employee working in Clark County, without pay or commission of any kind for a nonprofit organization, and such nonprofit organization shall supply the full and true name of each such volunteer employee to

the sheriff, and the sheriff may require such additional identification from each such employee as he deems necessary and proper. (Clark County, NV Ordinance 442 § 1; October 7, 1974.) (Emphasis added.)