Barry M. HOPKINS, Husband and Katie M. Hopkins, Wife, Plaintiffs–Appellants,

v.

CITY OF SIERRA VISTA, ARIZONA, a Body Politic, and Steven Gerhardt, Defendants–Appellees.

Nos. 89–15944, 89–16542.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1990.

Memorandum March 6, 1991.

Order and Opinion May 2, 1991.

Tony K. Behrens, Sierra Vista, Ariz. for plaintiffs-appellants.

Gerald F. Till, Fauver & Till, Sierra Vista, Ariz., for defendants-appellees.

Before HUG, BEEZER and BRUNETTI, Circuit Judges.

## ORDER

The memorandum disposition filed March 6, 1991, is redesignated as an authored opinion by Judge Beezer.

BEEZER, Circuit Judge:

Barry and Katie Hopkins appeal the grant of summary judgment and the award of attorneys' fees in favor of the defendants in a civil rights action brought pursuant to 42 U.S.C. § 1983. We reverse and remand for trial on the question of liability and reverse the award of attorneys' fees.

## I

Shortly after midnight on April 2, 1988, Plaintiff Barry Hopkins returned to his home at apartment 728 of the Sinaloa Apartments.[1] He played dominoes with his brother-in-law and then played cards with other friends and acquaintances who came to the apartment after he arrived home. While playing, Hopkins and his friends drank beer and whiskey.

Later that morning, the police department for the City of Sierra Vista received an anonymous telephone call reporting that a woman in apartment 728 of the Sinaloa Apartments was "getting the shit beat out of her" and that the violence had "been going on for hours." Officer Steven Gerhardt responded to the call, arriving at the Sinaloa Apartments at approximately 4:04 a.m.

---

1. Because this is an appeal of a grant of summary judgment in favor of the defendants, the facts are presented in the light most favorable to the Hopkinses. *See Wood v. Ostrander,* 879 F.2d 583, 586–87 (9th Cir.1989), *cert. denied,* — U.S. ——, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). Where a fact is disputed by the defendants, the dispute is noted.

When Gerhardt arrived at the Sinaloa Apartments, he may have heard sounds evidencing a card game, possibly including an argument, coming from apartment 728.[2] The noise may have been "a little too loud for that time of night." He may also have heard the sound of chairs being moved underneath a table.[3] He did not hear anything that sounded like a woman screaming for help.

After hearing someone knock on the door,[4] Hopkins opened the door wide enough to put his hand through and stated to Gerhardt that he knew he and his company had been loud, but that everything was over and everyone was going home.[5] Gerhardt informed Hopkins that he had a report of an assault and was checking on the welfare of the occupants. Gerhardt tried to persuade Hopkins to allow him into the house to check on the welfare of the occupants, but Hopkins refused. Hopkins also refused to allow Gerhardt to speak to Hopkins' wife, explaining that she was asleep and he did not want to wake her. Gerhardt smelled alcohol on Hopkins' breath and noticed that Hopkins acted in a way Gerhardt associated with alcohol consumption. Gerhardt had responded to over 1000 complaints of domestic violence and it

was his experience that alcohol is often involved in domestic disturbances. He also knew, through personal experience and conversations with other officers, that Hopkins had been involved in other domestic violence situations.[6]

Gerhardt then placed his hand against Hopkins' chest and forced his way into the apartment. He was in the apartment for ten to twelve minutes and left after speaking to Hopkins' wife.[7]

The Hopkinses brought suit seeking damages and injunctive relief against Gerhardt and the City of Sierra Vista. Both parties filed motions for summary judgment, although the Hopkinses withdrew their motion with respect to the City. On June 14, 1989, the district court granted summary judgment in favor of the defendants. The Hopkinses appealed.

On June 22, 1989, defendants filed a motion for attorneys' fees, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 11. On August 21, 1989, the district court granted defendants' motion. On October 11, 1989, the district court amended its order granting fees to clarify that it did not intend fees to be granted pursuant to Rule 11, or to be assessed against counsel for plaintiff. Plaintiffs moved for reconsideration. On

---

2. Hopkins testified that the card game broke up because "[t]here was a little competition, confusion between a couple people," that was about "the game or what somebody had did at the time of the game or something like that," but then said he did not "think it was really an argument," just that they were "a little bit too loud for that time of night." Hopkins also testified that the card game ended 30 minutes before Gerhardt arrived.

Gerhardt testified that when he arrived at the Sinaloa Apartments, he heard shouting coming from an upstairs apartment, and that when he got to the door, he heard "sounds coming from the apartment ... yelling, commotion, things being moved about."

3. Although Gerhardt claims he heard the sound of things "banging about," Hopkins testified that the only pieces of furniture moved were the chairs used for the card game.

4. Gerhardt stated that he knocked on the door, heard commotion and voices in the apartment, and a lot of activity, and then knocked again after 45 to 60 seconds. Hopkins testified that he only heard one knock, but did not know whether there had been others.

5. Gerhardt testified that Hopkins said he now "had everything under control," which Gerhardt interpreted to mean that things had not been in control earlier.

6. Gerhardt stated that a factor in his decision to enter was

my own personal encounters with Mr. Hopkins involving disturbances, in addition to information I have learned from other police officers through the course of daily briefings and conversation, where Mr. Hopkins has been involved in domestic violence situations with his wife in particular and with—I'm not sure if it was a girlfriend or his fiancee in the past, where a stabbing had occurred. I had a fair bit of knowledge about Mr. Hopkins's past involvement with the police involving disturbances and with his wife and he being involved in disturbances.

Hopkins admitted that there were previous occasions in which the police went to places where he was to investigate disturbance calls.

7. Gerhardt estimates that he was in the apartment for one to two minutes.

November 17, 1989, the district court denied reconsideration and awarded fees in the amount of $6,054.50. The award and the amount are both appealed. Both parties seek attorneys' fees on appeal pursuant to 42 U.S.C. § 1988.

## II

We review a grant of summary judgment *de novo*, examining all facts and inferences drawn from them in the light most favorable to the non-moving party, to determine whether there are any genuine issues of material fact. *Wood v. Ostrander*, 879 F.2d 583, 586–87 (9th Cir.1989) (citations omitted), *cert. denied*, — U.S. —, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). However, "[i]n a § 1983 action, the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) (citation omitted).[8] "[S]ummary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." *Id.*

In granting summary judgment in favor of the defendants, the district court stated that "there existed probable cause for the entry and search in question." However, the warrantless search of a house requires both probable cause and exigent circumstances. *United States v. Suarez*, 902 F.2d 1466, 1467–68 (9th Cir.1990); *see also United States v. Howard*, 828 F.2d 552, 555 (9th Cir.1987). We must determine, therefore, whether the facts, viewed in the light most favorable to the Hopkinses, establish as a matter of law that there were both probable cause and exigent circumstances to justify Gerhardt's warrantless search.

■ Exigent circumstances are those "that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons." *United States v. Lindsey*,

877 F.2d 777, 780 (9th Cir.1989) (quotation omitted). "The exigencies must be viewed from the totality of the circumstances known to the officers at the time of the warrantless intrusion." *Id.* (quotation omitted). Where there is probable cause to believe someone is being beaten, there clearly are exigent circumstances justifying immediate entry.

■ Probable cause requires "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life," that a crime has been, is being, or is about to be committed. *United States v. George*, 883 F.2d 1407, 1412 (9th Cir.1989).

■ Officer Gerhardt's visit to the Hopkinses' apartment was precipitated by an anonymous phone call. However, probable cause depends both on the quantity and quality of the information possessed by the police. *See Alabama v. White*, — U.S. —, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.*

In determining the role of an anonymous tip in establishing probable cause, the Supreme Court, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), determined that a magistrate or court "must consider an informant's 'veracity,' 'reliability' and 'basis of knowledge' under the totality of the circumstances." *United States v. Roberts*, 747 F.2d 537, 543 (9th Cir.1984). Although these things are difficult to test in the case of an anonymous informant, corroboration of details of the tip that could be known only to someone close to the situation may suggest that the tip is reliable. *See Gates*, 462 U.S. at 244–45, 103 S.Ct. at 2335.

More recently, the Court explained that in finding reasonable suspicion[9] where

---

**8.** This is different from direct review of a determination of probable cause in a criminal arrest, where the court must review "both law and fact and ... draw the line as to what is and is not

reasonable behavior." *McKenzie*, 738 F.2d at 1008.

**9.** "Reasonable suspicion is a less demanding standard than probable cause not only in the

there was an anonymous tip alleging criminal conduct but police observations showed no suspicious behavior, "[w]hat was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information—a special familiarity with respondent's affairs." *White*, 110 S.Ct. at 2417 (emphasis in original). Details such as the fact that the defendant entered a car matching the description given were not significant because "[a]nyone could have 'predicted' that fact because it was a condition presumably existing at the time of the call." *Id.*

We have accepted anonymous tips as a basis for probable cause where significant details of the tip were corroborated. *See, e.g., United States v. Rodriguez*, 869 F.2d 479 (9th Cir.1989); *United States v. Fixen*, 780 F.2d 1434 (9th Cir.1986). However, in the present case there are no details to corroborate; the tip consisted only of a bald assertion that the crime was occurring at a certain place.

A tip similar to this one was given to the police in *United States v. Kerr*, 876 F.2d 1440 (9th Cir.1989), in which an anonymous informant told police only that the defendant was growing and distributing marijuana. Although the tip itself contained no detail that could be corroborated to show the reliability of the informant, we agreed that probable cause had been established. This conclusion was based in part on the fact that, subsequent to receiving the tip, police investigation "revealed several additional facts which, although relatively innocuous on their face, tend[ed] to corroborate the informant's story," including the fact that the investigating officer smelled the odor of marijuana at the defendant's home.[10]  *Id.* at 1444.

Similarly, in *White by White v. Pierce County*, 797 F.2d 812 (9th Cir.1986), we upheld a warrantless entry by police offi-cers dispatched to the plaintiff's residence because of a report that a seven-year-old child with severe welts on his back was seen playing in the yard. While the officers were speaking with the plaintiff, they saw a boy who appeared to be about seven years old trying to show them his back. When the plaintiff told the boy to go to another room and refused to let the officers see the boy, the officers entered forcibly and examined the boy. *Id.* at 814.

In both *Kerr* and *White*, the tips contained nothing to indicate their reliability. However, probable cause was not based solely, or even largely, on the tip; other evidence existed that contributed to the finding.

Seemingly innocent conduct may become suspicious in light of the initial tip. *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13. An officer's experience may also be considered in determining probable cause. *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir.1985) (" 'Conduct innocent in the eyes of the untrained may carry entirely different "messages" to the experienced or trained observer.' "). An officer's knowledge of a person's character or previous contact with the police is relevant, but not dispositive. *See Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964) ("[T]he officer's knowledge of the petitioner's physical appearance and previous record [is not] either inadmissible or entirely irrelevant upon the issue of probable cause. But to hold that knowledge of either or both of these facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.").

When Officer Gerhardt arrived at apartment 728, he heard loud voices and other noises. It is unclear, however, whether the sounds he heard were of an argument, or

---

sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *White*, 110 S.Ct. at 2416. Nevertheless, the analysis used in *Gates* "applies in the reasonable suspicion context, the only difference being the level of suspicion that must be established." *Id.*

**10.** The court suggested the odor of contraband might itself be sufficient to establish probable cause. *Id.* (citing *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948)).

were simply those of a loud, albeit late, social gathering. Sounds of an argument, or yelling, would be consistent with a domestic disturbance. Gerhardt saw the door opened by a man he knew had previously been involved in domestic disturbances, who had obviously been drinking and who appeared not to want him to see into the apartment. Gerhardt's experience, with Hopkins in particular and with domestic problems in general, made these facts appear consistent with the tip. In light of the fact that someone had suggested that domestic violence was taking place in that very apartment, Gerhardt might reasonably have determined that there was a domestic disturbance going on if he heard loud sounds consistent with a dispute.[11] If not, Gerhardt's determination of probable cause was based only on an untested anonymous tip, his prior knowledge of Hopkins and the fact that Hopkins had been drinking. It is questionable whether this would be enough to establish probable cause. *See Beck,* 379 U.S. at 97, 85 S.Ct. at 228. Because there is a genuine dispute regarding what Gerhardt could have heard, and because the question of probable cause in a section 1983 case is usually one for the jury, *McKenzie,* 738 F.2d at 1008, summary judgment was not appropriate in this case.

Although defendants suggest that we affirm the summary judgment on the grounds of qualified immunity and deliberate indifference to constitutional rights, those questions were not ruled on by the district court and we refuse to address them here.

### III

The district court denied the Hopkinses' motion for summary judgment on the issue of the liability of Officer Gerhardt. They now appeal that denial.[12]

The denial of a motion for summary judgment " 'is an interlocutory order from which no appeal is available until the entry of judgment following the trial on the merits.' " *Kraus v. County of Pierce,* 793 F.2d 1105, 1107 (9th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987) (quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2715, at 636 (1983)). Because we now reverse and remand for further proceedings on the issue of probable cause, the denial of the Hopkinses' motion is interlocutory and we do not have jurisdiction.

### IV

Because we reverse and remand for further proceedings on the merits, there is no prevailing party and we must also reverse the district court's award of attorneys' fees. Likewise, neither party is entitled to fees for this appeal. *See Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (one who obtains a reversal of a directed verdict against him is not a "prevailing party" for section 1988 purposes; to "prevail," one must "establish his entitlement to some relief on the merits of his claims, either in the trial court or on appeal").

**REVERSED** and **REMANDED** for further proceedings.

---

**11.** To hold that an anonymous tip regarding domestic violence may carry no weight would have the effect of foreclosing the use of anonymous informants to detect and stop domestic violence. Domestic violence is seldom planned in advance and there are few details an informant could give to establish the reliability of her information. She could be required to give her name, but such a requirement might deter many legitimate tips, and "[t]he Fourth Amend-ment does not require a standard that leaves no place for anonymous citizen informants." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

**12.** The defendants address the question of liability of the City of Sierra Vista. That issue was not before the district court and thus is not properly before this court.