87 F.3d 1320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Chuck JOHNSON, Plaintiff-Appellant,
v.
Peter S. KROHN, Jane Doe Krohn, husband and wife; Jane Doe
Wertanen, John Doe Wertanen, husband and wife,
Defendants-Appellees.
Chuck JOHNSON, Plaintiff-Appellee,
v.
Peter S. KROHN; Jane Doe Krohn, husband and wife, Defendants,
and
John Doe Wertanen; Jane Doe Wertanen, husband and wife,
Defendants-Appellants.
 No. 94-36158, 94-36189.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 1996.
Decided June 07, 1996.
 
 Before: WRIGHT, PREGERSON, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Chuck Johnson appeals the district court's grant of summary judgment in favor of Defendant Officers Peter Krohn and Don Wertanen. Defendant Officer Wertanen also appeals the district court's order denying his motion for attorney's fees. The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand. The district court erred in granting summary judgment because genuine issues of material fact exist. In addition, we find that our reversal renders Officer Wertanen's appeal moot.
 
 I. FACTUAL BACKGROUND
 
 3
 The following facts are not in dispute. By December 13, 1990, when Plaintiff Chuck Johnson was arrested, ITT employees had been on strike for a couple of months. On the evening of the plaintiff's arrest, the plaintiff and co-workers Chester Mills and Michael Jackson were on picket duty. While the plaintiff and his co-workers were picketing, ITT Security Guard John K. Hammack called the police and complained that the plaintiff had trespassed on ITT property.
 
 
 4
 Officer Krohn responded to the call at 10:45 p.m. When Officer Krohn arrived at ITT, no one was trespassing. He thus spoke with Security Guard Hammack who described the plaintiff's alleged trespass on ITT property. Officer Krohn then asked the plaintiff whether he had trespassed. The plaintiff denied that he ever entered ITT property. Officer Krohn then spoke with Security Guard Hammack for a second time.
 
 
 5
 While this was taking place, Officer Wertanen arrived to provide assistance. Officer Wertanen had a dog in his vehicle. The dog started barking, and plaintiff became nervous. He told Officers Krohn and Wertanen that he was "scared to death of dogs." Officer Krohn then frisked the plaintiff.
 
 
 6
 Officer Krohn told the plaintiff that he was under arrest for criminal trespass and disorderly conduct. Officer Krohn also cited the plaintiff for these same offenses at 10:48 p.m. It is unclear whether Officer Krohn gave the plaintiff the citation before or after he arrested him.
 
 
 7
 Officer Krohn drove the plaintiff to Hoquiam Police Department and booked him for criminal trespass and disorderly conduct. Officer Wertanen helped Officer Krohn prepare some of the booking forms. The plaintiff slept in a cell alone until 9:25 a.m. the next morning when he was released on his own recognizance. On December 3, 1991, the charges against the plaintiff were dismissed with prejudice.
 
 
 8
 The rest of the facts are in dispute. The parties disagree as to whether plaintiff trespassed; whether the ITT property lines were clear; whether Officer Krohn conducted an adequate investigation before arresting plaintiff; and whether plaintiff posed a threat to public safety.
 
 II. PROCEDURAL BACKGROUND
 
 9
 On December 19, 1993, the plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that Officers Krohn and Wertanen violated his Fourth Amendment rights by arresting and putting him in jail without probable cause. On September 7, 1994, Officer Krohn moved for summary judgment claiming that he had probable cause to arrest and detain the plaintiff and that he was entitled to qualified immunity.
 
 
 10
 The district court granted summary judgment in Officer Krohn's favor by finding that he had probable cause to arrest the plaintiff. The court did not reach the issue of qualified immunity. Because the district court found that there was probable cause to arrest, it dismissed the plaintiff's claim against Officer Wertanen. The district court, however, denied Officer Wertanen's motion for an award of attorney's fees and costs.
 
 III. STANDARD OF REVIEW
 
 11
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 IV. DISCUSSION
 A. Probable Cause
 
 12
 To state a cause of action under § 1983, the plaintiff must show (1) that Officer Krohn acted under color of state law and (2) that Officer Krohn deprived the plaintiff of his federal constitutional or statutory rights. Barry v. Fowler, 902 F.2d 770, 772 (9th Cir.1990) (citing Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir.1988)). The parties agree that Officer Krohn acted under color of state law. The only question is whether Officer Krohn deprived the plaintiff of his Fourth Amendment rights when he arrested the plaintiff.
 
 
 13
 The Fourth Amendment "protects individuals against arrests without probable cause." Karim-Panahi, 839 F.2d at 624 (citing McKenzie v. Lamb, 738 F.2d 1005, 1007 (9th Cir.1984)). In § 1983 actions, "the existence of probable cause is a question for the jury." Id. "However, when there is no genuine issue of [material] fact, summary judgment is appropriate if no reasonable jury could find an absence of probable cause under the facts." Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir.1994) (citing McKenzie, 738 F.2d at 1008), cert. denied, 115 S.Ct. 2582 (1995). Here, genuine issues of material fact exist.
 
 
 14
 1. Did the plaintiff trespass on ITT property?
 
 
 15
 The plaintiff and his co-workers all deny that the plaintiff ever entered ITT property. Security Guard Hammack reported to Officer Krohn that the plaintiff entered about twenty to thirty feet inside the "gate marking the beginning of the plant property." But Security Guard Hammack made no reference to a gate in his incident report. Whether Officer Krohn reasonably believed that plaintiff trespassed is a question for the jury to decide.
 
 
 16
 2. Were the property lines clear?
 
 
 17
 It is unclear from the record whether a reasonable person could have known where the ITT property lines began. According to a diagram attached to the declarations of the plaintiff and co-workers Mills and Jackson, the strikers picketed on a city street in front of ITT. Adjacent to the ITT property is the Posey Manufacturing Company, where ITT strikers were allowed to picket. The ITT guard was stationed in a scale shack in front of a partially knocked down fence on ITT property. The partially knocked down fence carried a "No Trespassing" sign. Other than the fence, there was no other marker that indicated ITT property lines. There is no fence or gate in front of the scale shack.
 
 
 18
 3. Did Officer Krohn conduct an adequate investigation into the alleged misdemeanors plaintiff committed outside of Officer Krohn's presence?
 
 
 19
 According to plaintiff, Officer Krohn relied solely on Security Guard Hammack's version of events in arresting the plaintiff. Mills and Jackson contend that Officer Krohn did not question them about the plaintiff's alleged trespass. Officer Krohn, however, states that he asked co-workers Mills and Jackson about the plaintiff's alleged trespass, but Mills and Jackson turned their heads and walked away.
 
 
 20
 But even if it is true that Mills and Jackson ignored Officer Krohn's questioning, Officer Krohn may still have been required to investigate further before arresting plaintiff. Where an officer possesses information that would lead a reasonable police officer to make "further inquiry before effecting a warrantless arrest," the officer must inquire further before conducting an arrest. Merriman v. Walton, 856 F.2d 1333, 1335 (9th Cir.1988), cert. denied, 491 U.S. 905 (1989). As the Supreme Court has explained:
 
 
 21
 an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."
 
 
 22
 Illinois v. Gates, 462 U.S. 213, 242 (1983) (quoting Jones v. United States, 362 U.S. 257, 269 (1960)) (emphasis added). Thus, "police officers ha[ve] a duty to conduct an investigation into the basis of the witness' report." Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir.1991).
 
 
 23
 In this case, no one was trespassing on ITT property when Officer Krohn arrived. When asked by Officer Krohn if he had trespassed, the plaintiff denied trespassing. The alleged trespassing occurred at night on property that did not have clear markers. Officer Krohn also knew that the alleged trespasser was a striker and that the informant was a guard employed by the company that the alleged trespasser was picketing. Whether Officer Krohn's investigation in this case was reasonable is a factual question which must be resolved by the jury.
 
 
 24
 4. Did the plaintiff's use of profanity pose a threat to public safety?
 
 
 25
 Officer Krohn adds in his arrest report that Security Guard Hammack told him that before walking off ITT property, the plaintiff yelled profanity at Hammack. Officer Krohn, however, did not ask the plaintiff whether he did use profanity and what this profanity was before arresting him.
 
 
 26
 The plaintiff admits in his appellate brief that he used profanity at truck drivers and security guards crossing the picket line, but according to the plaintiff, he did so while standing outside ITT property. Regardless of where plaintiff was standing when yelling the profanity, the First Amendment prohibits enforcement of disorderly conduct statutes where they are applied to curb protected speech. Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1377, n. 4 (9th Cir.1990). The Court of Appeals of Washington has limited Washington's disorderly conduct statute to "those [words] ... which by their very utterance inflict injury or tend to incite an immediate breach of the peace." City of Kennewick v. Keller, 11 Wash.App. 777, 785 (1974).
 
 
 27
 Thus, on remand, the district court first must determine whether plaintiff's profanity was protected speech. If the district court determines that it is not protected speech, the jury then must decide whether Officer Krohn reasonably believed that plaintiff's use of profanity posed a public safety threat.
 
 
 28
 5. Did the plaintiff's waving of his arms pose a threat to public safety?
 
 
 29
 The district court held that Officer Krohn had probable cause to arrest the plaintiff because the plaintiff waved his arms. Quoting from Officer Krohn's declaration, the district court found that the plaintiff "presented a substantial risk of causing bodily harm to the guard at the plant or injury to property at that location, or of injuring himself through his largely out-of-control conduct caused by his anger and intoxication."
 
 
 30
 The plaintiff admits that he became agitated and nervous when the police dog started barking. It is, however, undisputed that the plaintiff told the officers that he was afraid of dogs. Further, plaintiff's coworkers maintain that before and after the dog started barking, the plaintiff was cooperative and did not resist arrest. Thus, the jury must decide whether, under these circumstances, Officer Krohn reasonably believed that the plaintiff, by waving his arms, posed a safety threat to the public.
 
 
 31
 6. Did plaintiff's intoxication pose a public safety threat?
 
 
 32
 Officer Krohn also maintains that he had probable cause to arrest the plaintiff because the plaintiff was intoxicated. Officer Krohn, however, did not conduct any sobriety tests to determine if the plaintiff was actually intoxicated. Further, co-workers Mills and Jackson testified that plaintiff was not drunk.
 
 
 33
 But even if plaintiff was drunk that does not mean that Officer Krohn had probable cause to arrest plaintiff for disorderly conduct. See Duran, 904 F.2d at 1377. Because Officer Krohn does not contend that plaintiff violated any law or ordinance simply by being drunk, to lawfully arrest plaintiff for disorderly conduct, Officer Krohn had to reasonably believe that plaintiff posed a threat to public safety. See id. Again, this factual question must be resolved by the jury.
 
 B. Qualified Immunity
 
 34
 Although the defendant raised the qualified immunity defense before the district court, the district court never reached this issue. We therefore, do not address it here. See Schneider v. County of San Diego, 28 F.3d 89, 93 (9th Cir.1994) (holding that because the district court granted summary judgment without reaching the qualified immunity issue, the issue "should be addressed in the first instance by the district court"), cert. denied, 115 S.Ct. 1112 (1995).
 
 
 35
 We note, however, that "[i]f a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993). In Act Up!, this court identified two categories of factual issues that may preclude a determination of qualified immunity on summary judgment:
 
 
 36
 First, a determination of reasonable suspicion or probable cause requires an inquiry as to the facts and circumstances within an officer's knowledge.... Second, the determination of what conduct underlies the alleged violation--what the officer and claimant did or failed to do--is a determination of fact.
 
 
 37
 Id.
 
 
 38
 In other words, where, as here, there are disputed issues of fact as to what the officer knew and did or failed to do and as to what the plaintiff did before the arrest, the district court cannot decide the qualified immunity question. Act Up!, 988 F.2d at 873.
 
 C. Joint Tort-feasor
 
 39
 The district court dismissed the plaintiff's action against Officer Wertanen as a joint tort-feasor because the court found that Officer Krohn had probable cause to arrest plaintiff. Because we find that genuine issues of material fact exist, we reverse the district court's dismissal of plaintiff's claim against Officer Wertanen.
 
 D. Attorney's Fees
 
 40
 The district court denied Officer Wertanen's request for attorney's fees and costs. Because we are reversing the district court's dismissal of plaintiff's claim against Officer Wertanen, we find his appeal to be moot.
 
 V. CONCLUSION
 
 41
 For the reasons set forth above, we reverse and remand.
 
 
 42
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3