116 F.3d 484
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Theodore GAINES, husband; Donna S. GAINES, wife,
Plaintiffs-Appellants,
v.
CITY of PHOENIX, (Arizona) a political subdivision of the
State of Arizona, County of Maricopa; Dennis GARRETT,
individually and in his official capacity as Chief of the
City of Phoenix Police Department; Jane Doe GARRETT, wife;
Mark ARMSTEAD, both individually and in his official
capacity as a City of Phoenix Police Officer; Sarah
ARMISTEAD, wife. Defendants-Appellees.
 No. 95-16880.
 United States Court of Appeals, Ninth Circuit.
 June 9, 1997.
 
 Appeal from the United States District Court for the District of Arizona.
 Stephen M. McNamee, D.J.
 Before: REINHARDT, and RYMER, Circuity Judges; TANNER,** D.J.
 MEMORANDUM*
 Theodore and Donna Gaines appeal the district court's grant of summary judgment in favor of the defendants and appeal the district court's dismissal of their pendent state claims. We have jurisdiction over this appeal and AFFIRM.
 STANDARD OF REVIEW
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Han v. Mobil Oil Corp., 73 F.3d 872, 874-75. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197. We will not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir.1996). When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate. Han, 73 F.3d at 875. In 42 U.S.C. § 1983 cases alleging an arrest in violation of the Fourth Amendment "summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir.1984).
 A district court's decision whether to retain jurisdiction over pendent claims when the original federal claims are dismissed is reviewed for an abuse of discretion. Sinaloa Lake Owners Ass'n v. City Simi Valley, 70 F.3d 1095, 1102 (9th Cir.1995); Brady v. Brown, 51 F.3d 810, 816 (9th Cir.1995) (district court should weigh factors such as economy, convenience, fairness, and comity).
 DISCUSSION
 The Gaineses claim that Detective Armistead sought and obtained warrants for their arrest which were not supported by probable cause. As such, the constitutional underpinning of this claim is the Fourth Amendment. Maag v. Wessler, 960 F.2d 773, 775 (9th Cir.1991). Probable cause has been stated as: "at the moment the arrest was made (in this case the warrant obtained) ... whether at that moment the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [appellants] had committed or [were] committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).
 The district court ruled that Detective Armistead has probable cause to obtain the warrants. In Arizona, custodial interference is defined as:
 A person commits custodial interference if, knowing or having reason to know that he has no legal right to do so, such person knowingly takes, entices or keeps from lawful custody any child who is less than eighteen years of age or incompetent and who is entrusted by authority of law to the custody of another person or institution.
 Ariz.Rev.Stat.Ann. § 13-1302(A) (1994).
 Detective Armistead, at the time he sought the warrants, had the following information: The 1988 divorce decree gave custody of Theodore's son Myron to his ex-wife Similla and the domestic relations file contained no lawful order modifying that custody; Theodore would not contact Detective Armistead; despite several arranged flights and a month after Donna agreed to return Myron to Phoenix, Myron was still in Oklahoma City; neither Similla nor Theodore's sister knew where Theodore was; Similla alleged that in two conversations with Myron he was crying and she overheard Theodore tell Myron that he would never see or talk to his mother again; and, Donna was on probation for child abuse.
 The Gaineses argue that Similla's story should not be believed. However, under the test for probable cause, the officer need only "reasonably trustworthy information ", Beck v. Ohio, supra. He confirmed the facts that Similla had custody based upon the 1988 divorce decree, that Donna was on probation for child abuse, and that Theodore's sister did not know his whereabouts. He left messages for Theodore who would not contact the detective, and Donna admitted that she should not keep Myron and agreed to return him a month prior to the issuance of the warrants.
 The Gaineses also argue that Armistead could not have looked at the domestic relations file, because if he would have read the relatively sparse file, he would have found that 1991 child support order indicating that Myron was to be residing with Theodore. However, they offer no facts in support of this argument. Under Fed.R.Civ.P. 56(e) a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." While summary judgment may not usually be appropriate in determining probable cause, it is "appropriate only if no reasonable jury could find that the officers did ... have probable cause...." McKenzie, 738 F.2d at 1008. The 1991 order, which appellants argue Armistead did not read, does not benefit the Gaineses. Under Arizona law, a court order which deals with support or other monetary obligation does not alter custody. Ariz.Rev.Stat. § 8-402 (renumbered as § 25-432).[1] The record reflects that on February 25, 1993, when Donna informed Armistead of the 1991 order, he told her that the order did not give them custody of Myron. Yet, after Donna was informed of the lack of legal effect of the 1991 order, two scheduled flights for Myron back to Phoenix were changed, and during a March 7, 1993 phone conversation with Myron Similla said she overheard Theodore tell Myron that he would never see his mother again. Shortly thereafter, Detective Armistead sought review of the case by the Maricopa County Attorney's Office who obtained warrants for the Gaineses arrest for custodial interference from the Maricopa County Justice Court.
 
 
 1
 Therefore, the facts that Armistead possessed, together with Arizona law on child custody amounted to probable cause as a matter of law and no "reasonable jury ", Id, could have found otherwise.[2]
 
 
 2
 The district court did not abuse its discretion in dismissing the pendent state claims. See Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1309 (9th Cir.1992), cert. denied, 507 U.S. 1004 (1993).
 
 
 3
 AFFIRMED.
 
 Gaines v. City of Phoenix, No. 95-16880
 REINHARDT, dissenting:
 
 4
 I dissent. As the majority indicates, "in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." McKenzie v. Lamb, 738 F.2d 1005 (1984). Here, it is undisputed that: (1) Donna Gaines repeatedly informed Detective Armistead of the existence of the 1991 Stipulated Order and described the process by which Robinson authorized the transfer of custody; (2) the 1991 order appeared twice in the Gaines v. Gaines domestic relations file in Phoenix; and (3) Armistead reviewed the contents of that file in order to determine who had legal custody of Myron Gaines. In particular, Armistead testified in his deposition that he "looked through" the domestic relations file in order to determine which parent had custody of Myron and to ascertain whether there was probable cause to arrest plaintiffs for custodial interference. He specifically testified that Donna Gaines told him of the existence of the 1991 Stipulated Order, but that he did not go back and look in the file for it, even though he knew that under Arizona law a person can only be charged with custodial interference if he knows he does not have legal custody of the child.
 
 
 5
 In Henderson v. Mohave County, 54 F.3d 592 (9th Cir.1995), we affirmed the district court's denial of qualified immunity in a § 1983 action almost identical to this one, concluding that:
 
 
 6
 The exercise of prudence by law enforcement officers demands more than mechanical reliance on a piece of paper. These deputies had put in their faces the evidence any prudent person would have taken into account....
 
 
 7
 Id. at 595. Henderson holds that qualified immunity is unavailable in a § 1983 action where law enforcement officers have been given notice that a subsequent court order has modified the custody order they are using as the basis for obtaining a warrant to arrest a parent for custodial interference, particularly where, as the evidence in the record suggests was the case here, they make no attempt whatsoever to investigate whether custody was in fact transferred.
 
 
 8
 As in Henderson, Armistead had a duty not to ignore Donna Gaines' protestations that Robinson had stipulated to the transfer of custody or to disregard the 1991 order. At the very least, he was required under clearly established federal law to conduct an inquiry into whether such an order existed, and, if so, what legal effect it had. See id. Armistead's own testimony is more than sufficient to give rise to a genuine issue of material fact as to whether he fulfilled that duty, or whether he instead arranged for obtaining the warrants with reckless disregard for whether there was probable cause for the arrests.
 
 
 9
 The identical factual dispute exists with respect to qualified immunity. No reasonable officer could believe that it would be lawful to seize a natural parent and his spouse on charges of custodial interference, incarcerate them in their home state pending extradition, arrange for their indictment, extradite them to the charging state, dress them in prison jumpsuits and shackle them, transport them in that condition through public airports and on commercial airline flights to the charging state, book them, and hold them for some fourteen days before releasing them on bail, without performing an adequate investigation as to whether there was probable cause for the arrest. Therefore, I would reverse the district court's grant of summary judgment in favor of Armistead and would remand for trial.
 
 
 
 **
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The existence of Ariz.Rev.Stat. § 8-402 together with the investigation performed by Detective Armistead distinguishes factually this case from Henderson v. Mohave Counnty, 54 F.3d 592 (9th Cir.1995). Therefore, the dissent's reliance on Henderson is misplaced
 
 
 [2]
 Because we hold that Detective Armistead had probable cause to obtain the warrants for the arrest of the Gaineses, we need not reach the issue of qualified immunity